**FILED**

March 20, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: _____ DT _____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | **Case No: EP:24-CR-00644-FM** |
| Plaintiff, | § § | **S E A L E D** |
| | § | **INDICTMENT** |
| v. | § § | **CTS 1-7: 18 U.S.C. § 1343-Wire Fraud** |
| | § § | **CTS 8-10: 18 U.S.C. § 1957-Engaging in** |
| TIMOTHY FRANCE JOHNSON, | § § § | **Monetary Transactions in Property Derived from Specified Unlawful Activity** |
| Defendant. | § § § | *Notice of Government's Demand for Forfeiture* |

**THE GRAND JURY CHARGES:**

## Introduction

At all times relevant to this Indictment:

1. **Shoot N'2 Sports LLC** is a Texas Limited Liability Company doing business out of El Paso, Texas. It was formed on February 9, 2009.

2. **BOLO Entertainment LLC**, ("BOLO") was a Texas Limited Liability Company doing business out of El Paso, Texas. It was formed on February 23, 2011.

3. **BOLO Sports, LLC**, is a Texas Limited Liability Company doing business out of El Paso, Texas. It was formed on December 13, 2017.

4. **Timothy France Johnson** is an individual residing in El Paso, Texas. He did business through BOLO Entertainment LLC, BOLO Sports, LLC, and Shoot N'2 Sports LLC (collectively, "the Companies"). He is also President and sole managing member of Shoot N'2 Sports LLC.

5. **The Fedwire system (Fedwire)** is a domestic electronic funds transfer system. All wires passing through the Fedwire system are interstate wires due to the location of their servers.

The wires alleged in this Indictment that used Fedwire went through Fedwire centers in East Rutherford, New Jersey and were in interstate and foreign commerce.

6. **The National Basketball Association ("NBA")** is a professional basketball league in North America compromised of thirty (30) basketball teams. Each individual basketball team is separately owned by private parties. Pre-season games are basketball games between NBA teams that takes place before the regular season begins.

7. **Company M** is a corporation doing business in El Paso, Texas. Defendant TIMOTHY FRANCE JOHNSON was employed at Company M during all times relevant to this Indictment.

8. **A "Ponzi" or "Ponzi scheme"** is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. Those running a Ponzi scheme often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk. In many Ponzi schemes, the participants focus on attracting new investments to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business. Ponzi schemes require a consistent flow of new investor funds to continue and tend to collapse when it becomes difficult to obtain sufficient new investor funds or when a large number of investors ask for their investment principal back.

9. **Monetary Transaction** means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth

2

amendment to the Constitution. This term includes the purchase of a cashier's check.

10. **Monetary Instrument** means coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders, or investment securities or negotiable instruments, in bearer form or otherwise in such form that title thereto passes upon delivery.

11. **Financial Institution** includes an insured bank (as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h)), a commercial bank or trust company, a credit union, and/or an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar instruments.

## SCHEME AND ARTIFICE TO DEFRAUD

12. Beginning at a time unknown to the United States but from at least in or about February 9, 2009, and continuing through and until at least in or about May 14, 2020, within the Western District of Texas and elsewhere, the defendant,

### TIMOTHY FRANCE JOHNSON,

did knowingly devise and intend to devise a scheme and artifice to defraud and obtain money and property from other persons, namely, investors with BOLO Entertainment LLC, Shoot N'2 Sports LLC, and BOLO Sports, LLC, by means of false and fraudulent pretenses, representations, and promises, while knowing that such pretenses, representations, and promises were and would be false when made.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

13. Defendant did business utilizing the Companies.

14. Through the Companies, Defendant created and executed a Ponzi-style fraud scheme. As part of the scheme, JOHNSON held himself out as a third-party promoter of NBA pre-

3

season games and convinced unwary investors to invest money with him to sponsor said pre-season games. Instead of investing the victims' funds, he would misappropriate them for his personal use or recycle the funds back to investors, claiming them to be returns on their investment. He never disclosed the misappropriation or the extent of the losses of the investors' funds.

15. On or about February 23, 2011, TIMOTHY JOHNSON ("Defendant") and another person known to the Grand Jury formed BOLO Entertainment LLC, a Texas LLC. JOHNSON was designated as its Senior Vice President.

16. On or about April 20, 2011, Defendant JOHNSON opened an Evolve Bank Account -3114.

17. On or about December 10, 2014, Defendant JOHNSON caused Pioneer Bank Account -7115 to be opened in another's name.

18. On or about December 13, 2017, Defendant JOHNSON opened a Security Service Credit Union Account -071.

19. Defendant JOHNSON solicited investments verbally, via telephone, and via email from various individuals to invest in pre-season basketball games between select NBA teams.

20. Defendant JOHNSON would solicit investors by guaranteeing them large returns on their investments with little to no risk.

21. Defendant JOHNSON would meet with investors at his office within Company M, a legitimate business in El Paso, Texas. Defendant JOHNSON's office contained assorted sports memorabilia which lulled investors into believing Defendant JOHNSON was associated with the NBA.

22. Defendant JOHNSON would provide investors with false and fraudulent promotion contracts between BOLO and the NBA for the staging and promotion of pre-season NBA

4

basketball games.

23. Defendant JOHNSON provided and entered into written investment agreements with investors. These investment agreements made materially false and fraudulent statements and representations to investors concerning the use of investor funds.

24. Defendant JOHNSON caused investors to transfer funds to him or his agent via wire, cashier's check, or cash.

25. Defendant JOHNSON created false and fictitious investment statements to facilitate the false and fraudulent scheme. These investment statements made materially false and fraudulent statements and representations to investors concerning the use of investor funds and the source of investor returns.

26. Defendant JOHNSON would request investors "roll over", i.e., re-invest their fictitious earnings from one season's games into the next season's games. By doing so, Defendant JOHNSON avoided requests for payments from investors.

27. Rather than invest these funds in pre-season NBA games, Defendant JOHNSON would use the funds to pay false profits to earlier-stage investors or misappropriate the funds for personal use.

28. Through this scheme, Defendant collected over $3 million in investor funds.

29. Defendant used approximately one million dollars of the deposited investment funds to pay bogus investment profits to other clients, thereby further concealing his scheme. Defendant spent the remainder of the investment funds for personal use.

30. None of the investment funds were used to promote pre-season NBA games.

## EXECUTION OF THE SCHEME TO DEFRAUD

### COUNTS ONE THROUGH SEVEN
### (Wire Fraud)
### (18 U.S.C. § 1343)

31. Paragraphs one through thirty of this Indictment are incorporated herein by reference as if set forth in their entirety.

32. Beginning on or about February 9, 2009, and continuing through and including on or about May 14, 2020, in the Western District of Texas and elsewhere, the Defendant,

**TIMOTHY FRANCE JOHNSON,**

knowingly devised and attempted to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, both by affirmative acts and by omissions and deceitful concealment of material facts, and in connection therewith did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds; that is, the Defendant **TIMOTHY FRANCE JOHNSON** caused to be transmitted by means of wire communication in interstate commerce, certain signals, signs, and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| One | April 9, 2019 | An interstate wire transfer, via Fedwire, of approximately $50,000 from the account of D.B. to Evolve account -3114 in the name of Defendant. |
| Two | April 10, 2019 | An interstate wire transfer, via Fedwire, of approximately $50,000 from the account of J.D. to Evolve account -3114 in the name of Defendant. |

6

| Three | April 17, 2019 | An interstate wire transfer, via Fedwire, of approximately $50,000 from the account of D.B. to Evolve account -3114 in the name of Defendant. |
|---|---|---|
| Four | April 19, 2019 | An interstate wire transfer, via Fedwire, of approximately $50,000 from the account of J.D. to Evolve account -3114 in the name of Defendant. |
| Five | May 31, 2019 | An interstate wire transfer, via Fedwire, of approximately $60,000 from the account of J.D. to Evolve account -3114 in the name of Defendant. |
| Six | July 17, 2019 | An interstate wire transfer, via Fedwire, of approximately $50,000 from the account of S.I. to Evolve account -3114 in the name of Defendant. |
| Seven | August 1, 2019 | An interstate wire transfer, via Fedwire, of approximately $25,000 from the account of S.I. to Evolve account -3114 in the name of Defendant. |

all in violation of Title 18, United States Code, Section 1343.

## COUNTS EIGHT THROUGH TEN
### (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)
### (18 U.S.C. § 1957)

33. Paragraphs one through thirty-two of this Indictment are incorporated herein by reference as if set forth in their entirety.

34. Beginning on or about February 9, 2009, and continuing through and including on or about May 14, 2020, in the Western District of Texas and elsewhere, the Defendant,

7

**TIMOTHY FRANCE JOHNSON,**

did knowingly engage in, and attempt to engage in the following monetary transactions affecting interstate commerce, by and through and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, Wire Fraud in violation of 18 U.S.C. § 1343, and knowing that the property involved in the monetary transaction represented the proceeds of some form of unlawful activity, as more particularly described in each Count below:

| Count | Date | Description |
|-------|------|-------------|
| Eight | April 17, 2019 | Cashier's check to T.R. for approximately $32,499.52 from Evolve account -3114 in the name of the Defendant. |
| Nine | May 31, 2019 | Wire to O.C. for $61,508.00 from Evolve account -3114 in the name of the Defendant. |
| Ten | August 5, 2019 | Cashier's check to R.M. for approximately $12,000.00 from Evolve account -3114 in the name of the Defendant. |

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P. 32.2]

### I.
### Wire Fraud Violation and Forfeiture Statutes
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28 U.S.C. 2461(c)]

As a result of the foregoing criminal violation set forth in Counts One through Seven, the United States of America gives notice to Defendant **TIMOTHY FRANCE JOHNSON** of its intent to seek the forfeiture of certain property upon conviction and pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28

U.S.C. § 2461(c). Title 18 U.S.C. § 981(a)(1)(C) state in pertinent part:

**Title 18 U.S.C. § 981. Civil Forfeiture**
(a)(1) The following property is subject to forfeiture to the United States:
* * *
(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7).

## II.
## Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity Violation and Forfeiture Statutes
## [Title 18 U.S.C. § 1957, subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violation set forth in Counts Eight through Ten, the United States of America gives notice to Defendant **TIMOTHY FRANCE JOHNSON** of its intent to seek the forfeiture of certain property upon conviction pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**Title 18 U.S.C. § 982. Criminal Forfeiture**
**(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand of Forfeiture includes but is not limited to the Money Judgment described below in Paragraph III.

## III.
## Money Judgment

A sum of money that represents the amount of proceeds obtained, directly or indirectly, property involved in such offense, or traceable to such property as a result of the violations set

9

forth above for which Defendant **TIMOTHY FRANCE JOHNSON** is solely liable.

**Substitute Assets**

If any forfeitable properties, as a result of any act or omission of the Defendant:

a.     cannot be located upon the exercise of due diligence;
b.     has been transferred or sold to, or deposited with, a third person;
c.     has been placed beyond the jurisdiction of the Court;
d.     has been substantially diminished in value; or
e.     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture, pursuant to Title 21 U.S.C. § 853(p) and Fed.

R. Crim. P. 32.2, of any other property (substitute assets) of said Defendant up to the value of the

forfeitable property.

A TRUE BILL.

FOREPERSON OF THE GRAND JURY

JAIME ESPARZA
UNITED STATES ATTORNEY

BY:_____
        Assistant U.S. Attorney

10